<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK GIRALDI,<br><br>    Defendant. | Civil Action No. 20-2830 (SDW) (LDW)<br><br><br>**OPINION**<br><br><br>March 16, 2021 |

**WIGENTON,** District Judge.

Before this Court is Defendant Frank Giraldi's ("Defendant") Motion for Partial Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1345, and 1355. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

This action involves a dispute over Congress's intended penalty for the non-willful failure to file a Report of Foreign Bank and Financial Accounts (commonly referred to as an "FBAR" form) pursuant to the Bank Secrecy Act ("BSA" or the "Act") of 1970, 31 U.S.C. § 5311, *et seq.*, and its corresponding regulations. Before turning to the Motion, this Court provides a brief overview of pertinent provisions from the BSA to contextualize the undisputed material facts.

**A.    Legal Background**

Congress enacted the BSA in 1970 to curb money laundering and other financial crimes in

response to the increasing unavailability of bank records—both foreign and domestic—of persons suspected to be involved in illegal financial activities. *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 26–28 (1974); *see* 31 U.S.C. § 5311. For example, a primary purpose of the BSA is to deter tax evasion that can occur when individuals maintain foreign financial bank accounts. *United States v. Kahn*, No. 17-7258, 2019 WL 8587295, at *4 (E.D.N.Y. Sept. 23, 2019). Accordingly, the Act seeks to require certain reports and records that aid in "criminal, tax, or regulatory investigations or proceedings," or in conducting "intelligence or counterintelligence activities . . . ." 31 U.S.C. § 5311; *see Bedrosian v. U.S. Dep't of Treasury, IRS*, 912 F.3d 144, 147 (3d Cir. 2018). To this end, Congress tasked the Secretary of the Treasury to promulgate rules that require United States ("U.S.") citizens, residents, or those doing business in the U.S. to keep records and/or file reports when they "make[] a transaction or maintain[] a relation for any person with a foreign financial agency."[1] 31 U.S.C. § 5314(a).

The Secretary has implemented Section 5314 through a series of regulations. *See, e.g.*, 31 C.F.R. §§ 1010.350, 1010.306. These regulations require the annual filing of an FBAR form for covered individuals who have "a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350. Furthermore, an FBAR form must be filed by June 30 only if a covered person's foreign financial accounts exceed $10,000 during the prior calendar year. 31 C.F.R. § 1010.306(c).

The BSA authorizes the Secretary of Treasury to impose civil monetary penalties on individuals who violate any provision of Section 5314. 31 U.S.C. § 5321(a)(5)(A). Initially, the

---

[1] Section 5314(a) provides, in relevant part, that: "Considering the need to avoid impeding or controlling the export or import of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency." 31 U.S.C. § 5314(a).

2

Act only provided civil penalties for willful violations of Section 5314. *Kahn*, 2019 WL 8587295, at *4–5 (providing an in-depth overview of the BSA's legislative history). In 2004, however, Congress amended the BSA to include penalties for non-willful violations. *Id.* at *8; *see* 31 U.S.C. § 5321(a)(5)(B)(i). The BSA presently provides for civil penalties as follows:

> (5) Foreign financial agency transaction violation.--
>
> > (A) Penalty authorized.--The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314.
> >
> > (B) Amount of penalty.--
> > > (i) In general.--Except as provided in subparagraph (C), the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.
> > > (ii) Reasonable cause exception.--No penalty shall be imposed under subparagraph (A) with respect to any violation if--
> > > > (I) such violation was due to reasonable cause, and
> > > > (II) the amount of the transaction or the balance in the account at the time of the transaction was properly reported.
> >
> > (C) Willful violations.--In the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314--
> > > (i) the maximum penalty under subparagraph (B)(i) shall be increased to the greater of--
> > > > (I) $100,000, or
> > > > (II) 50 percent of the amount determined under subparagraph (D), and
> > > (ii) subparagraph (B)(ii) shall not apply.
> >
> > (D) Amount.--The amount determined under this subparagraph is--
> > > (i) in the case of a violation involving a transaction, the amount of the transaction, or
> > > (ii) in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.

31 U.S.C. § 5321(a)(5).

### B. Factual Background

Turning to the Motion, this Court summarizes the undisputed facts.[2] Defendant is a U.S. citizen who resides in New Jersey and owned four (4) foreign financial accounts during the tax years currently at issue—2006, 2007, 2008, and 2009 ("Relevant Tax Years"). (D.E. 20-1 ¶ 3; D.E. 25 ¶ 3; D.E. 8 ¶¶ 4, 9.) The Government maintains that Defendant should have disclosed his four (4) accounts on an FBAR form for each of the Relevant Tax Years. (D.E. 20-1 ¶¶ 3–4; D.E. 25 ¶¶ 3–4.) In September 2014, Defendant entered the Internal Revenue Service's ("IRS") voluntary disclosure program and self-reported that he did not file FBAR forms for any of the Relevant Tax Years. (D.E. 20-1 ¶ 5; D.E. 25 ¶ 5.)

On November 2, 2017, the Government proposed a penalty assessment of $160,000 against Defendant for his alleged non-willful failure to file FBAR forms.[3] (D.E. 20-1 ¶ 7; D.E. 25 ¶ 7.) The Government's proposed assessment is comprised of sixteen (16) separate $10,000 penalties, including one penalty for each of Defendant's four (4) accounts that were not disclosed on four (4) FBAR forms. (D.E. 20-1 ¶ 8; D.E. 25 ¶ 8.) A breakdown of the Government's penalty assessment is depicted in the chart below:

---

[2] This Opinion cites to paragraphs found in Defendant's moving brief, which contains three (3) additional facts than Defendant's separate statement of undisputed material facts. (*Compare* D.E. 20-4, *with* D.E. 20-1 at 2–6; *see also* D.E. 25 at 1 (noting that the Government's response to the statement of undisputed facts correlates to the numbered paragraphs in Defendant's moving brief).) Unless otherwise noted, the facts are undisputed.

[3] The Government disputes whether Defendant unknowingly failed to file FBAR forms. (D.E. 25 ¶ 9 (noting that discovery may reveal evidence of Defendant's willful failures).) This dispute is not material, however, because the question presented focuses solely on Defendant's alleged non-willful failures. (*See id.*)

| Tax Year | Number of Foreign Financial Accounts | Penalty |
|---|---|---|
| 2006 | 4 | (4 accounts x $10,000 each) = **$40,000 Penalty** |
| 2007 | 4 | (4 accounts x $10,000 each) = **$40,000 Penalty** |
| 2008 | 4 | (4 accounts x $10,000 each) = **$40,000 Penalty** |
| 2009 | 4 | (4 accounts x $10,000 each) = **$40,000 Penalty** |
| | | **Total Penalty = $160,000** |

(D.E. 20-1 ¶ 8; D.E. 25 ¶ 8.) Thereafter, the IRS denied Defendant's appeal of the Government's proposed penalty assessment. (D.E. 20-1 ¶ 10; D.E. 25 ¶ 10.) Thus, on July 18, 2018, the Government formally assessed $160,000 in FBAR penalties against Defendant. (D.E. 20-1 ¶ 11; D.E. 25 ¶ 11; D.E. 25 at 8, Fact A; D.E. 26-2 at 1, Fact A.) On July 24, 2018, the Government sent Defendant a demand letter for payment of $160,000. (D.E. 20-1 ¶ 11; D.E. 25 ¶ 11.) Defendant ultimately paid the Government $60,000 total, comprised of four (4) $15,000 checks, one for each of the Relevant Tax Years.[4] (D.E. 20-1 ¶ 12; D.E. 25 ¶ 12.)

The Government filed this lawsuit on March 16, 2020, for the remainder of Defendant's penalty assessment plus interest.[5] (D.E. 1 ¶ 22; D.E. 20-1 ¶ 13; D.E. 25 ¶ 13.) On December 22, 2020, Defendant filed the instant Motion seeking partial summary judgment on the issue of whether, pursuant to Section 5321(a)(5)(B)(i) of the BSA, his alleged non-willful failure to file FBAR forms may result in maximum penalties of $10,000 for each undisclosed account.[6] (D.E.

---

[4] The Government disputes that Defendant paid $60,000 under protest. (D.E. 20-1 ¶ 12; D.E. 25 ¶ 12.)

[5] Defendant filed an Answer on June 24, 2020 and lodged a Counterclaim to recoup the $60,000 he paid to the Government. (D.E. 20-1 ¶ 14; D.E. 25 ¶ 14; D.E. 6.) An amended Counterclaim was filed on June 25, 2020. (D.E. 8.)

[6] This Court need not address whether the Government timely assessed FBAR penalties for the 2006 and 2007 tax years because Defendant has withdrawn his argument regarding the statute of limitations. (D.E. 20-1 at 13–14; D.E. 26 at 1; D.E. 26-2 at 1, Fact A.)

20; D.E. 20-1.) The Motion was fully briefed on January 29, 2021. (D.E. 24; D.E. 26.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III.   DISCUSSION

This Court must ascertain whether Congress intended to penalize non-willful violations of Section 5314 on a per FBAR form or per account basis, particularly when an FBAR form is required but never filed. More specifically, the parties ask this Court to determine Defendant's maximum penalty under Section 5321(a)(5)(B)(i): either (a) $160,000, consisting of $10,000 for each of his four (4) foreign financial accounts ($40,000) multiplied by four (4) (the number of FBAR forms Defendant failed to file); or (b) $40,000, comprised of $10,000 for each of the four (4) FBAR forms Defendant did not file. (*See generally* D.E. 20-1; D.E. 24; D.E. 26.) Indeed, the BSA's non-willful provision simply states that penalties "shall not exceed $10,000" and does not expressly answer the question presented. *See* 31 U.S.C. § 5321(a)(5)(B)(i). Moreover, this is an

7

issue of first impression in this District, and no federal appellate court has addressed the intended scope of the BSA's non-willful penalty provision. Although Congress created the non-willful provision nearly sixteen years ago pursuant to the Act's 2004 amendment, only three district courts have addressed this narrow issue, including two within the last nine months.

The first of those decisions, *United States v. Boyd*, adopted the Government's interpretation of Section 5321(a)(5)(B)(i) that "each non-willful FBAR violation relates to a foreign financial account." No. 18-803, 2019 WL 1976472, at *4 (C.D. Cal. Apr. 23, 2019). Under *Boyd*, the Government may penalize individuals up to $10,000 for each account that should have been disclosed on an FBAR form.[7] *See id.* Two courts have expressly disagreed with *Boyd*, holding that penalties for non-willful violations of the Act's reporting requirement apply on a per FBAR form, not a per account basis. *United States v. Bittner*, 469 F. Supp. 3d 709, 717–26 (E.D. Tex. 2020); *United States v. Kaufman*, No. 18-787, 2021 WL 83478, at *8–11 (D. Conn. Jan. 11, 2021). As discussed in detail below, although neither *Boyd*, *Bittner*, nor *Kaufman* are binding in our District, this Court aligns with the more persuasive reasoning in *Bittner* and *Kaufman*. Accordingly, pursuant to Section 5321(a)(5)(B)(i) of the BSA, penalties for non-willful reporting violations attach to each FBAR form rather than any undisclosed foreign financial account.

### A. Statutory Interpretation

Because the Motion involves an issue of statutory interpretation, an examination of the BSA's text is required. To support their contrasting positions regarding penalties for non-willful violations, the parties refer to the BSA's provision for willful violations (Section 5321(a)(5)(C)–(D)) and the Act's reasonable cause exception (Section 5321(a)(5)(B)(ii)). This Court is guided by the same provisions in its quest to decipher Congress's intent.

---

[7] The Ninth Circuit held oral argument on Boyd's appeal in September 2020; however, a decision has not been rendered. (*See* D.E. 20-1 at 12 n.6.)

The "fundamental canon of statutory construction" requires an interpretation of words "consistent with their ordinary meaning . . . at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070, 2074 (2018) (internal quotations omitted). In addition, courts rely on a "'toolkit' containing 'all the standard tools of interpretation' used to 'carefully consider the text, structure, history, and purpose' of the statute." *United States v. Smukler*, 986 F.3d 229, 239 (3d Cir. 2021) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–15 (2019)). As the Third Circuit has stated, "the 'plain meaning' of statutory language is often illuminated by considering not only 'the particular statutory language' at issue, but also the structure of the section in which the key language is found, 'the design of the statute as a whole and its object.'" *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) (quoting *United States v. Schneider*, 14 F.3d 876, 879 (3d Cir. 1994)). Thus, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

As a preliminary matter, the Supreme Court has made clear that civil and criminal penalties under Section 5321 of the BSA "attach only upon violation of regulations promulgated by the Secretary" pursuant to Section 5314. *Shultz*, 416 U.S. at 26. Consequently, without the Secretary of Treasury's regulations, the BSA "would impose no penalties on anyone." *Id.* Relevant here, the Secretary has mandated the filing of an FBAR form by June 30 "with respect to foreign financial accounts exceeding $10,000" during the prior calendar year. 31 C.F.R. §§ 1010.350(a), 1010.306(c). It follows that a "violation" of "any provision of [S]ection 5314," *see* 31 U.S.C. § 5321(a)(5)(A), includes the failure to file an FBAR form when an individual maintains over $10,000 in foreign financial accounts during a single calendar year.[8] *See Bittner*, 469 F. Supp. 3d

---

[8] Section 5321(a)(5)(A) states that the Secretary "may impose a civil money penalty on any person who violates, or causes *any violation* of, *any provision* of [S]ection 5314." 31 U.S.C. § 5321(a)(5)(A) (emphasis added). To the extent

9

at 718. When the failure to file an FBAR form is non-willful, Section 5321(a)(5)(B)'s penalty provision is triggered. *See* 31 U.S.C. § 5321(a)(5)(B).

This Court now examines the BSA's willful penalty provision to ascertain Congress's intent regarding the application of penalties under the Act's non-willful provision. For willful violations of Section 5314 that involve "a failure to report the existence of an account or identifying information required to be provided with respect to an account," the BSA provides a maximum penalty that is the greater of $100,000 or 50 percent of "*the balance in the account* at the time of the violation." 31 U.S.C. §§ 5321(a)(5)(C), 5321(a)(5)(D)(ii) (emphasis added). In drafting the willful provision, Congress clearly knew how to attach penalties on an account-specific basis. *Bittner*, 469 F. Supp. 3d at 719. When Congress amended the BSA in 2004, nearly three decades after the BSA's enactment, it undoubtedly "had a template for how to relate an FBAR reporting penalty to specific financial accounts." *Id.* Congress's failure to incorporate similar account-specific language in the non-willful provision "is persuasive evidence" that it did not intend the provision to yield account-specific penalties. *Id.* (citing *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other

---

*Bittner* implies "it is the failure to file an annual FBAR that is the [*only*] violation contemplated and that triggers the civil penalty provisions of § 5321," this Court disagrees. *See Bittner*, 469 F. Supp. 3d at 718. Such a narrow reading would not account for a possible violation where a *timely* filed FBAR form contains inaccurate information or omits information required under the Secretary's regulations. *See* 31 U.S.C. § 5314(a)(1)–(4) (providing that "records and reports shall contain the following information in the way and to the extent the Secretary prescribes: (1) the identity and address of participants in a transaction or relationship. (2) the legal capacity in which a participant is acting. (3) the identity of real parties in interest. [and] (4) a description of the transaction."); (*see* D.E. 26 at 11–12 (arguing that "[i]f a taxpayer did not have reasonable cause for failing to list a reportable account," his timely filed FBAR was "[im]proper [ ] and [he] committed a violation") (citing *Kaufman*, 2021 WL 83478, at *10).) Thus, Section 5321(a)(5)(A)'s triggering language—"any violation of, any provision of [S]ection 5314"—arguably encompasses different types of violations under a variety of circumstances. Although this Court need not address the universe of possible violations, it rejects the Government's argument that the word "any" in Section 5321(a)(5)(A) necessarily permits multiple non-willful penalties per FBAR form. (*See* D.E. 24 at 6–7 (arguing that because the article "any" precedes a noun, one FBAR form may involve more than one non-willful penalty).) As discussed below, absent Congressional intent suggesting otherwise, it would be incongruous to assess more than one non-willful penalty per FBAR form.

10

provisions of the same statute.")); *Kaufman*, 2021 WL 83478, at *9 n.8 (citing *Kahn*, 2019 WL 8587295, at *4–*7). Indeed, Congress conceivably chose harsher penalties for willful violators because their conduct plausibly creates additional detection challenges from the Government's perspective. *See Bittner*, 469 F. Supp. 3d at 721.

The Government also argues that the different structure and language of the non-willful provision signifies Congress's "intent to capture a wide range of reporting violations that do not meet the higher bar of a willful violation." (D.E. 24 at 10.) Assuming the Government accurately restates Congress's intent in this regard, it provides no reasonable explanation for Congress's failure to incorporate account-based language in the non-willful penalty provision. (*See id.* at 10–11.) Neither the Government nor this Court can escape the fact that Congress remained silent under the backdrop of the willful provision. *See Bittner*, 469 F. Supp. 3d at 721 (noting that "the most the [c]ourt can safely do is rely on the plain language that appears in the statute").

Moreover, in certain circumstances the Government's proposed construction would allow a similarly situated non-willful violator to incur more penalties than a willful violator. *Kaufman*, 2021 WL 83478, at *10 (citing *Bittner*, 749 F. Supp. 3d at 722). For example, suppose two individuals separately maintained $100,000 evenly across twenty (20) foreign financial accounts. Both individuals fail to file an FBAR form, but the first individual's failure is non-willful while the second individual's failure is willful. Under the Government's position, the first non-willful violator would be subject to a maximum penalty of $200,000 (20 accounts x $10,000 penalty). Conversely, the second willful violator would be subject to a $100,000 penalty (the greater of $100,000 or fifty percent of "the balance in the account[s]"). [9] *See* 31 U.S.C. §§ 5321(a)(5)(C)

---

[9] In this hypothetical, the balance of each account is $5,000 ($100,000 divided by 20 accounts). Fifty percent of "the balance in [each of] the account[s]" is $2,500 ($5,000 divided by 2). *See* 31 U.S.C. §§ 5321(a)(5)(C)(i)(II) and (D)(ii). Thus, the total penalty under Section 5321(a)(5)(C)(i)(II) is $50,000 ($2,500 x 20 accounts). Because $100,000 is greater than $50,000, the penalty for this willful violator would be $100,000. *See* 31 U.S.C. § 5321(a)(5)(C)(i)(I).

and 5321(a)(5)(D)(ii).

Next, this Court considers the BSA's reasonable cause exception.  Under the exception, no penalty will be imposed when a non-willful violation of Section 5314 was "due to reasonable cause" and "the amount of the transaction or the balance in the account at the time of the transaction was properly reported."  31 U.S.C. § 5321(a)(5)(B)(ii).  The Government contends that because the exception expressly relates to "the balance in the account," it implicitly indicates that the non-willful penalty provision also applies on a per account basis.  (D.E. 24 at 8–9.)

Tellingly, Congress passed the reasonable cause exception together with the non-willful provision in 2004.  *Bittner*, 469 F. Supp. 3d at 719.  It is logical to conclude that Congress intentionally omitted account-specific language when crafting the non-willful provision because it simultaneously created an exception that expressly depends on the proper reporting of either the "balance in the account" or the transactional amount.  *Kaufman*, 2021 WL 83478, at *9 (citing *Bittner*, 469 F. Supp. 3d at 719); *see Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).  Just as it did with the reasonable cause exception, Congress easily could have included account-specific language in the non-willful penalty provision.  *Bittner*, 469 F. Supp. 3d at 719–20 (rejecting the Government's argument that an "exception to a rule should somehow inform the calculation of the penalty for a violation of that rule" and declining to engage in "pure conjecture" as to why the reasonable cause exception refers to "balance in the account").

In addition, the Government argues that *Bittner*'s per-form approach is incorrect because it would preclude use of the reasonable cause exception where an individual could invoke it for

some, but not all foreign financial accounts reported on an FBAR form. (D.E. 24 at 9.) This Court disagrees. Even if an individual could invoke the exception for a select number of accounts reported on a timely FBAR form, that person "would still have violated Section 5314," and would be subject to a maximum penalty of $10,000 under the non-willful provision. *See Kaufman*, 2021 WL 83478, at *10. Beyond the Government's self-serving statement that the reasonable cause exception "was clearly not intended to operate in that manner," it provides no support for its contention. (*See* D.E. 24 at 9.) Thus, there is no evidence before this Court to suggest that Congress did not intend the reasonable cause provision to operate as an all or nothing exception.[10]

### B. Additional Implications

Furthermore, as articulated in *Bittner* and *Kaufman*, it would be incongruous to attach penalties for non-willful violations on a per account basis for a plethora of additional reasons. First, the FBAR reporting requirement does not depend on the number of foreign financial accounts an individual maintains, but rather an aggregate account balance over $10,000. *Bittner*, 469 F. Supp. 3d at 720; *see* 31 C.F.R. § 1010.306(c). For example, an FBAR form need not be filed if an individual has fifty (50) foreign financial accounts with an aggregate balance that never exceeds $10,000 in a calendar year. *See* 31 C.F.R. § 1010.306(c). By contrast, if another individual has twenty-five (25) accounts with an aggregate balance of $10,001, an FBAR form must be filed.[11] Absent explicit direction from Congress, it is illogical to interpret Section

---

[10] Akin to *Bittner*, the Government also fails to consider that the reasonable cause exception may be invoked irrespective of an individual's reporting of the proper "balance in the account." *See* 31 U.S.C. § 5321(a)(5)(B)(ii)(II). Instead, the exception may apply when "the amount of the transaction" is properly reported. *See id.* Accordingly, under the Government's logic, the non-willful penalty provision need not necessarily apply on a per account basis, but rather per transaction. *Bittner*, 469 F. Supp. 3d at 720 n.4.

[11] To illustrate the potential disparity under the Government's approach, particularly with respect to the reasonable cause exception, suppose this same individual could invoke the exception for five (5) out of twenty-five (25) accounts reported on the FBAR form. If the non-willful provision permits a penalty for each of the remaining fifteen (15) accounts, then the Government could impose a penalty up to $150,000 (15 accounts x $10,000 penalty). The maximum penalty is $139,999 more than the aggregate balance in all twenty-five (25) accounts.

5321(a)(5)(B)(i) to provide penalties on a per account basis when the FBAR reporting requirement is completely independent of how many accounts an individual maintains. *Bittner*, 469 F. Supp. 3d at 720.

The inherent imbalance that would result should this Court adopt the Government's position is highlighted further by the following hypothetical. Suppose two individuals each maintain $5 million across multiple foreign financial accounts in a single calendar year. One individual has five (5) accounts that each hold $1 million. The other individual has fifty (50) accounts that each hold $100,000. Under the Government's approach, if both individuals non-willfully fail to file FBAR forms for the same tax year, the maximum penalty for the first individual would be $50,000 (5 accounts x $10,000 penalty), and $500,000 for the second individual (50 accounts x $10,000 penalty). *See Bittner*, 469 F. Supp. 3d at 721 (providing a similar example). The Government presents nothing to suggest that Congress intended to create such vast penalty discrepancies when individuals maintain the same or similar balances across a different number of accounts. (*See generally* D.E. 24.)

Relatedly, the Government argues that a blanket penalty for all non-willful violators would unfairly equate those who fail to report multiple accounts with those who fail to report a single account. (D.E. 24 at 12.) Although the Government's corollary is legitimate, it does not alter this Court's analysis. As stated above, because the number of accounts has no bearing on whether an individual must file an FBAR form, it defies logic to impose penalties on a per account basis without clear Congressional intent to the contrary, particularly when Congress included account-specific language in both the reasonable cause exception and willful penalty provision. Thus, even if some non-willful violators omit more accounts than other non-willful violators, this concern is ultimately a policy matter left to Congress. *See Kaufman*, 2021 WL 83478, at *10 (noting that "it

is for Congress to decide, as a matter of policy, the penalty that may be imposed for non-willful violations, either as an incentive to report or to punish under-reporting").

### C. *United States v. Boyd*

Finally, the Government's opposition brief cites to *United States v. Boyd* merely twice in passing. (*See* D.E. 24 at 4, 7 (citing *Boyd*, 2019 WL 1976472).) Because *Boyd* is the only decision that aligns with the Government's position, this Court addresses it briefly.[12] Like the Defendant here, Boyd maintained fourteen (14) foreign financial accounts and failed to file a required FBAR form. *Boyd*, 2019 WL 1976472, at *1. The IRS concluded that Boyd's failure was non-willful and assessed thirteen (13) separate penalties against her, one for each undisclosed account.[13] *Id.* at *2. The Government sued Boyd for $47,279 in total penalties, plus late fees and interest. *Id.*

In *Boyd*, the Government advanced arguments by referencing the account-specific language in the BSA's willful and reasonable cause provisions. *Id.* at *3–4. Although *Boyd* acknowledged that the intended application of Section 5321 is "somewhat unclear," the court determined that "given the relevant language the Government highlights above, . . . the Government has advanced the more reasonable interpretation." *Id.* at *4. Significantly, the court merely reiterated the Government's arguments and conducted no analysis in coming to its conclusion. *See id.*; *see also Bittner*, 469 F. Supp. 3d at 725 (noting that "[t]he *Boyd* court did not elaborate on *why* the Government's interpretation was the more reasonable one, which is quite unfortunate . . . ."); *Kaufman*, 2021 WL 83478, at *11 ("[I]t is unclear whether the *Boyd* court considered the general presumption that Congress acts intentionally when it includes disparate

---

[12] Moreover, this Court need not address other cases cited by the Government because they do not analyze penalties under the BSA's non-willful provision. *See United States v. Ott*, No. 18-12174, 2019 WL 3714491 (E.D. Mich. Aug. 7, 2019); *United States v. Gardner*, No. 18-3536, 2019 WL 1767120 (C.D. Cal. Apr. 22, 2019); *United States v. Markus*, No. 16-2133, 2018 WL 3435068 (D.N.J. July 16, 2018).

[13] For reasons not discussed by the court, it appears that the IRS did not assess a penalty against one of Boyd's fourteen accounts. *See Boyd*, 2019 WL 1976472, at *1–2.

language in different sections of the same statute."). As discussed *supra*, this Court declines to read account-specific language into the non-willful provision solely because such verbiage appears elsewhere in the Act. *Bittner*, 469 F. Supp. 3d at 726 (remarking that the word "account" or "accounts" appears throughout the BSA over one hundred (100) times and refusing to "insert words into statutes that are not there") (citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ("The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province. We construe [a statute's] silence as exactly that: silence.")); *see Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) (reiterating that the court's "task is to apply the text, not to improve upon it").

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment is **GRANTED**.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:         Clerk
cc:           Leda D. Wettre, U.S.M.J.
              Parties